UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

FLORIDA KEYS ELECTRIC
COOPERATIVE ASSOCIATION, INC.,

    **Plaintiff,**

    v.

NATIONWIDE LIFE INSURANCE
COMPANY, et al.,

    **Defendants.**

Case No. 2:14-cv-372
JUDGE GREGORY L. FROST
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' motion for judgment on the pleadings (ECF No. 12), Plaintiff's memorandum in opposition (ECF No. 16), and Defendants' reply memorandum (ECF No. 18). Also before the Court is Plaintiff's motion for leave to file a sur-reply (ECF No. 23) and Defendants' memorandum in opposition (ECF No. 24), as well as a request by Plaintiff for oral argument. For the reasons that follow, the Court **DENIES** Plaintiff's request for oral argument, **GRANTS** the motion for leave to file a sur-reply (ECF No. 23), and **DENIES** the motion for judgment on the pleadings (ECF No. 12).

### I.    Background

This case involves an insurance dispute between Plaintiff, Florida Keys Electric Cooperative Association, Inc., and Defendant Nationwide Life Insurance Company. During the time period relevant to this action, Plaintiff had a self-funded insurance plan and a supplemental stop loss insurance policy, the latter of which it purchased from Defendant. The stop loss policy, which was underwritten by Defendant RMTS LLC, was in effect throughout the entirety of 2010

1

and applied to medical and prescription losses that were incurred from January 1, 2009 through December 31, 2010, and that were paid from January 1, 2010 through December 31, 2010.

Plaintiff alleges that during the benefit year, it sought reimbursement for two stop loss claims totaling $534,394.67 of qualifying medical expenses that were attributable to a participant identified as "TC," but that Defendants denied the claims on the grounds that TC had not been properly disclosed and was therefore "not covered on the stop loss contract." (ECF No. 1 ¶ 19.) Plaintiff pleads that "the Claim Denial was definitive, making any future submission futile." (*Id.* ¶ 20.) Plaintiff did not submit an additional $715,794.67 in claims arising from TC, but instead negotiated with the billing hospital to reduce the bill amount to $548,647.93. Plaintiff eventually paid the reduced bill in 2012, which is outside the benefit year covered by the stop loss policy. Plaintiff now wants reimbursed.

Plaintiff asserts claims for declaratory judgment, breach of contract/prior material breach, tortious interference with a contractual business relationship, and unjust enrichment.[1] (ECF No. 1 ¶¶ 27-49.) Defendants have filed a motion for judgment on the pleadings (ECF No. 12), and Plaintiff has filed a motion for leave to file a sur-reply in connection with that motion (ECF No. 23.) The parties have completed briefing on both of the motions, which are ripe for disposition.

## II. Discussion

### A. Oral Argument

In its briefing, Plaintiff has requested oral argument on the motion for judgment on the pleadings. Pursuant to the Local Civil Rules, parties may apply to the Court for oral argument if

---

[1] The parties agree that Florida law governs the stop loss policy. (ECF No. 12, at Page ID # 64 n.2; ECF No. 16, at Page ID # 554 n.10.) Accordingly, this Court shall apply that state's law.

2

"oral argument is deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented." S.D. Ohio Civ. R. 7.1(b)(2). The local rule also provides that "[i]f the Court determines argument or a conference would be helpful, the Court will notify all parties." *Id.* Whether to grant or deny a request for oral argument is thus left to the sound discretion of the trial court. *Whitescarver v. Sabin Robbins Paper Co.*, No. C-1-03-911, 2006 WL 2128929, at *5-6 (S.D. Ohio July 27, 2006). Because the Court finds that oral argument is not essential to the fair resolution of the motion for judgment on the pleadings, this Court **DENIES** the request for oral argument.

### B. Sur-reply

Plaintiff has filed a motion for leave to file a proffered sur-reply, arguing that Defendants' reply memorandum raised four issues for the first time. (ECF No. 23.) Defendants oppose the motion for leave and assert that they were simply responding in their reply memorandum to issues Plaintiff had raised in Plaintiff's memorandum in opposition.

Local Civil Rule 7.2(a)(2) contemplates three types of legal memoranda: a motion, a memorandum in opposition, and a reply. The rule provides that "[n]o additional memoranda beyond those enumerated will be permitted except upon leave of court for good cause shown." S.D. Ohio Civ. R. 7.2(a)(2). "[T]his Court has consistently held that in order for a party to be given permission to file a sur-reply, the reply brief must raise new grounds that were not presented as part of the movant's initial motion." *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, No. 2:07–CV–1190, 2010 WL 4117552, at *4 (S.D. Ohio Oct.19, 2010). A surreply is not warranted where the party merely seeks to help the court evaluate the opposing party's

3

submissions. *See id.*; *see also White v. Honda of Am. Mfg., Inc.*, 191 F. Supp. 2d 933, 944 (S.D. Ohio 2002).

Deciding whether Defendants raised new issues for the first time or simply addressed points implicitly raised by Plaintiff could perhaps require parsing a fine line not easily susceptible to such divining. The Court need not engage in such parsing, however, in light of Defendants' contention that Plaintiff's proffered sur-reply memorandum "adds nothing to the analysis of the issues at hand" and "is inconsequential." (ECF No. 24, at Page ID # 600.) Because any error in considering the sur-reply would therefore be harmless by Defendants' own rationale, the Court **GRANTS** the motion for leave to file a sur-reply. (ECF No. 23.) This Court shall treat the already filed sur-reply as part of the briefing under consideration. (ECF No. 23-1.)

    C.  **Motion for Judgment on the Pleadings**

        1.  **Standard Involved**

Defendants seek judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), which requires that this Court review the motion in the same manner that the Court would review a motion made under Rule 12(b)(6). *Ferron v. Zoomego, Inc.*, 276 F. App'x 473, 475 (6th Cir. 2008); *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). In order to determine whether Plaintiff has asserted claims upon which this Court can grant relief, the Court must construe Plaintiff's pleading in its favor, accept the factual allegations contained in the pleading as true, and determine whether the factual allegations present a plausible claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). The Supreme Court has explained, however, that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

4

Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Consequently, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

To be considered plausible, a claim must be more than merely conceivable. *Twombly*, 550 U.S. at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). What this means is that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. *See also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

### 2. Analysis

According to the complaint, Plaintiff did not submit for reimbursement $548,647.93 in claims and did not pay $501,330.67 of this amount until 2012, which is outside the benefit period. The complaint does not indicate whether Plaintiff paid the remaining approximately $47,000 within the benefit period. Citing the failure to pay, Defendants assert that they are therefore entitled to judgment on the pleadings on Plaintiff's declaratory judgment and breach of contract claims because the obligation to reimburse under the stop loss policy arises only after Plaintiff has first paid an eligible claim.

> The policy states that the terms "pay," "paid," and "payment" mean
>
> that a claim has been adjudicated by the [third party administrator] and the funds are actually disbursed by the Plan prior to the end of the Benefit period. Payment of a claim is the unconditional and direct payment of a claim to a Covered Person

5

> or their health care provider(s).  Payment may be deemed made on the date that both: 1. the payor directly tenders payment by mailing (or by other form of delivery) a draft or check; and 2. The account upon which the payment is drawn contains, and continues to contain, sufficient funds to permit the check or draft to be honored by the institution upon which it is drawn.

(ECF No. 1-1, at Page ID # 19.)  Plaintiff does not dispute that it failed to pay the claims within the benefit period in order to satisfy this policy language.  But, Plaintiff argues, it did not have to do so because Defendants had engaged in an anticipatory breach of the contract.

Under Florida law, " '[a]n anticipatory breach of contract is one committed before the time has come when there is a present duty of performance, and is the outcome of words or acts evincing an intention to refuse performance in the future.' " *Peachtree Cas. Ins. Co. v. Walden*, 759 So.2d 7, 8 (Fla. Ct. App. 5th Dist. 2000) (quoting 11 Fla. Jur.2d *Contracts* § 307 (1997)). To present such a breach here, Plaintiff directs this Court to the portion of the complaint that indicates that Defendants sent a September 23, 2010 letter in which they denied that TC was a covered individual on the grounds that he had not been properly disclosed to them at the time the policy had been renewed.  Although Plaintiff disputes that there was a failure to properly disclose TC and this issue remains unsettled, the key point here is that Plaintiff purports to have regarded the letter as notice that Defendants would deny *all* claims arising from TC's illness. According to Plaintiff, Defendants' blanket denial of coverage for TC was a breach that led Plaintiff to change its position to one of pursuing mitigation of its damages for the unsubmitted claims exceeding $500,000.

In other words, Plaintiff argues that because the blanket denial was an anticipatory breach, Plaintiff never had to pay the specific medical bills at issue herein and then submit an unsuccessful claim under the stop loss policy in order to base a claim on Defendants' failure to

6

abide by the contract. Plaintiff asserts that it instead could permissibly do what it did, which was negotiate the over $700,00 in medical bills down to approximately $501,000, which it paid in 2012, and then pursue these damages for a breach of the policy in this action.

Florida law provides that when an anticipatory breach occurs, the non-breaching party has three options:

> "[F]irst, to rescind the contract altogether; second, to elect to treat the repudiation as a breach by bringing suit or by making some change in position; or, third, to await the time for performance of the contract and bring suit after that time has arrived."

*Dutra v. Kaplan*, 137 So.3d 1190, 1192 (Fla. Ct. App. 3d Dist. 2014) (quoting *Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A.*, 938 So.2d 571, 575 (Fla. Ct. App. 4th Dist. 2006) (footnote omitted)). Plaintiff posits that it elected to pursue the second option by treating Defendants' repudiation as a breach and making a consequent change in position. This explanation frames the decision to obtain a better deal on the amount of the bills at issue as the change in position, a strategic shift from paying and pointlessly pursuing reimbursement under the stop loss policy to mitigating damages and then suing for breach.

Defendants' briefing incorrectly relies on precedent that omits the change of position option that Plaintiff pursued. In doing so, Defendants seek judgment on an incomplete rationale that ignores that, instead of terminating the contract, Plaintiff could engage in the change of position it adopted and insist on continued performance of the stop loss policy. But for the anticipatory breach, Plaintiff would have had to satisfy the condition precedent of paying the bills and the authority Defendants cite for that proposition would support entering judgment here. In light of the anticipatory breach and the change of position option, however, Plaintiff did not

have to engage in futile pursuit of reimbursement, including meeting its contractual obligation to pay under the policy.  Rather, when an anticipatory breach occurs, "the nondefaulting party is relieved of its obligations under the contract."  *Ryan v. Landsource Holding Co., LLC*, 127 So.3d 764, 767-68 (Fla. Ct. App. 2d Dist. 2013).  *See also Kaplan v. Laratte*, 944 So.2d 1074, 1075 (Fla. Ct. App. 4th Dist. 2006) (recognizing that an anticipatory breach relieves the other party to a contract from any duty to tender performance).

This is not to say that it is irrelevant whether Plaintiff *could* have satisfied the conditions precedent under the stop loss policy.  Florida law provides that

> under some circumstances, the anticipatory beach of a contract by one party may excuse the other party from performing a condition precedent to that contract.  An anticipatory breach of contract occurs before the time has come when there is a present duty to perform as the result of words or acts evincing an intention to refuse performance in the future.  While anticipatory repudiation obviates the requirement that the conditions be performed, it does not obviate the requirement that they be performable.

*Alvarez v. Rendon*, 953 So.2d 702, 709 (Fla. Ct. App. 5th Dist. 2007).  Plaintiff thus had to have been able to perform under the stop loss policy.  *See Ryan*, 127 So.3d at 768 ("[W]hen anticipatory breach is asserted as the basis for affirmative relief, . . . the party seeking affirmative relief cannot establish that the repudiating party's breach caused him damages unless he proves that he would have been able to perform the contract if the repudiating party had not breached it.").

Defendants argue that Plaintiff cannot rely on the doctrine of anticipatory breach because Plaintiff was not ready, willing, and able to satisfy the condition precedent of paying the medical bills as required by the stop loss policy.  It is indeed correct that the complaint does not contain magic words expressly stating that Plaintiff was ready, willing, and able to pay the over

8

$500,000 in claims that were never submitted. However, although arguably a close call, this Court concludes that Plaintiff has pled factual content that allows the Court to draw the reasonable inference that Plaintiff was ready, willing, and able to tender such payment.

The complaint indicates that Plaintiff had previously submitted two stop loss claims totaling $534,394.67, both of which Defendants denied based on the non-disclosure rationale. Plaintiff pleads that once "[o]n notice" that Defendants "were denying all claims stemming from [TC's] illness," it did not submit the additional claims for $548,647.93. (ECF No. 1 ¶ 23.) Permissibly drawing upon the judicial experience and common sense involved in a Rule 12(c) inquiry, this Court reads the complaint to indicate that payment within the benefit period was possible but not performed based on futility. This conclusion is of course based on crediting the factual allegations of the pleading and drawing reasonable inferences therefrom. Whether this inference and Plaintiff's representation in the briefing that it was ready, willing, and able to pay remain correct in light of the actual development of the facts in this case remains just as open as the issue of whether Defendants indeed breached the contract does.

Defendants' briefing also attempts to draw a dispositive distinction between contracts of indemnity against loss and contracts of indemnity against liability. Because the stop loss policy was a contract of indemnity against loss, Defendants argue, the doctrines of anticipatory breach and futility could only apply after a covered event has occurred that would first implicate or trigger the contract's terms. In other words, there must be an actual loss—payment made—before there can be an anticipatory breach. This theory negates the nature of the anticipatory breach purportedly involved here.

9

Necessarily crediting Plaintiff's factual contentions, Defendants told Plaintiff that it would not pay for claims for TC, and this absolute denial was regardless of whether Plaintiff ever satisfied the conditions precedent. Disavowing a contractual duty before the time specified in a contract for performing that duty has arrived is the very definition of an anticipatory breach. *See Wisconsin Power & Light Co. v. Century Indem. Co.*, 130 F.3d 787, 793 (7th Cir. 1997). If Defendants indeed absolutely disclaimed any contractual duty to reimburse future claims related to TC well before the time came for them to reimburse those claims, Defendants engaged in a breach that made satisfaction of conditions precedent futile. The nature of the contract—indemnity for loss versus liability—is therefore of little consequence in this narrow context.

Defendants are not entitled to judgment on the pleadings on the declaratory judgment and breach of contract claims. Because Defendants' rationale for judgment on the claims for tortious interference and unjust enrichment is derivative of the rationale rejected above (*i.e.*, that because Plaintiff did not pay the claims within the benefit period, there was no wrongful refusal to reimburse), the Court also declines to enter judgment on the pleadings on these remaining claims.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff's request for oral argument, **GRANTS** the motion for leave to file a sur-reply (ECF No. 23), and **DENIES** the motion for judgment on the pleadings (ECF No. 12).

**IT IS SO ORDERED**.

                                          /s/ Gregory L. Frost
                                          GREGORY L. FROST
                                          UNITED STATES DISTRICT JUDGE